## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JUAN CELSO ZAVALETA PEREZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:14CV311 |
| ) | |
| FRANK L. PERRY, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On August 4, 2010, in the Superior Court of Forsyth County, Petitioner pled guilty to first-degree sex offense of a child, first-degree rape of a child, and indecent liberties with a child, in case 09 CRS 57756, and received a consolidated judgment with a term of imprisonment for 168 to 211 months in prison. (Id., ¶¶ 1-6; Docket Entry 2-3 at 11-12.)[1] He did not appeal. (Docket Entry 2, ¶ 8.)

On June 18, 2012, Petitioner filed a Motion for Appropriate Relief ("MAR") with the trial court. (Docket Entry 2-2 at 33-41.)[2]

---

[1] The Petition indicates that Petitioner proceeded to a bench trial in his State criminal case (see Docket Entry 2, ¶ 6(c)); however, it appears Petitioner misunderstood the question or made a typographical error as he previously acknowledged that he had pled guilty (see id., ¶ 6(a)), and other filings clarify that he did not go to trial (see, e.g., Docket Entry 2-3 at 7-10).

[2] Petitioner dated his MAR on May 31, 2012 (see Docket Entry 2-2 at 38), but the trial court did not file it until June 18, 2012

On October 1, 2012, the trial court denied Petitioner's MAR. (Id. at 31-32.) Petitioner then filed a second MAR on May 29, 2013. (Docket Entry 2-2 at 1-30.)[3] The trial court denied Petitioner's second MAR on September 3, 2013. (Docket Entry 2-1 at 9.) Petitioner then sought certiorari review with the North Carolina Court of Appeals on February 26, 2014. (Id. at 2-8.)[4] On March 17, 2014, the North Carolina Court of Appeals denied that petition. (Id. at 1.)

Finally, Petitioner signed his Petition, under penalty of perjury, and dated it for mailing on April 8, 2014 (Docket Entry 2 at 14), and the Court stamped and filed the Petition on April 11, 2014 (id. at 1).[5] Respondent has moved to dismiss the Petition as

---

(see id. at 31). As either date leads to a recommendation of dismissal, the undersigned United States Magistrate Judge need not determine which date controls.

[3] Petitioner entitled the Motion as one for reconsideration of his earlier MAR (see Docket Entry 2-2 at 1); however, the trial court referred to it instead as a "Motion for Appropriate Relief" (see Docket Entry 2-1 at 20). The differing labels do not affect the undersigned's analysis, and thus for the sake of simplicity and continuity, the undersigned refers to it as a MAR. Moreover, Petitioner dated his MAR on March 18, 2013 (see Docket Entry 2-2 at 29), but the trial court did not file it until May 29, 2013 (see Docket Entry 2-1 at 20). As either date leads to a recommendation of dismissal, the undersigned need not determine which date controls.

[4] The North Carolina Court of Appeals instead referred to the certiorari petition as filed on March 5, 2014 (see Docket Entry 2-1 at 1). As either date leads to a recommendation of dismissal, the undersigned need not determine which date controls.

[5] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition

2

untimely. (Docket Entry 6.) Petitioner responded. (Docket Entry 9.) For the reasons that follow, the Court should grant Respondent's instant Motion because Petitioner submitted his Petition outside of the one-year limitations period.

### **Petitioner's Claims**

The Petition raises four grounds for relief: (1) "Violation of Brady[v. Maryland, 373 U.S. 83 (1963)] law" (Docket Entry 2 at 4) because the State allegedly suppressed an "SBI report and [a] [m]edical report" (Docket Entry 2-2 at 11); (2) "Grossly [d]isproportionate and [c]ruel and unusual [p]unishment" (Docket Entry 2 at 6) because of "the sentence imposed" (Docket Entry 2-2 at 13); (3) "Violation of [d]ue [p]rocess of law by accepting a plea which was invalid, unknowing and involuntary" (Docket Entry 2 at 7) because his counsel "led [] [Petitioner] to believe that [Petitioner] will receive a sentence not to exceed a class I felony for Indecent Liberties with a Minor, level I at the mitigated range" (Docket Entry 2-2 at 16); and (4) "Violation of Article 36 of the Vienna Convention" (Docket Entry 2 at 9).[6]

---

filed on April 8, 2014, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 2 at 14.)

[6] Petitioner did not reargue or provide support for these grounds of relief in his Petition; rather, Petitioner reincorporated eighty-seven pages worth of filings, and burdened the Court with the task of reviewing them for him. This practice violates Local Rule 7.2, and such action brings with it the possibility of consequences. See Stephenson v. Pfizer Inc., No. 1:13CV147, 2014 WL 4410580, at *1 n.1 (M.D.N.C. Sept. 8, 2014)

3

**Discussion**

Respondent moves to dismiss the Petition because Petitioner filed his Petition outside of the one-year limitations period, see 28 U.S.C. § 2244(d)(1). (Docket Entry 7 at 3-12.) In order to assess Respondent's statute of limitations argument, the undersigned must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

(unpublished).

4

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005). Neither Petitioner nor Respondent claim that subparagraphs (B) or (C) apply in this situation. (See Docket Entries 2, 3, 5, 6, 7, 9.) However, in response to Respondent's instant Motion, Petitioner asserts that subparagraph (D) applies. (Docket Entry 9 at 3.) Alternatively, Petitioner claims, for reasons detailed below, that the statute of limitations should not prohibit the Court from addressing the merits of his case. (Id. at 3-9.) Thus, the undersigned must first determine which subparagraph applies in order to decide when the statute of limitations commenced.

Under subparagraph (D), the one-year limitations period begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").

Although Petitioner contends that subparagraph (D) applies, Petitioner does not elaborate on the reasoning for its application to his claims or to which claims it should apply. (See Docket Entry 9.) Rather, Petitioner's arguments in his response mainly address the need for equitable tolling of the statute of limitations. (Id.) In an abundance of caution, the undersigned nonetheless will review the applicability of subparagraph (D) to Petitioner's claims.

At the time Petitioner pled guilty, he either knew or through due diligence should have known the length of his sentence for purposes of determining whether it qualified as grossly disproporationate; whether his actual plea matched his expected plea; and whether he had received a consular visit in accord with Article 36 of the Vienna Convention. The only possible basis for application of subparagraph (D) lies in Ground 1, in that, Petitioner claims the State withheld exculpatory materials.

In Petitioner's state filings, he alleged that, in May of 2012 he received a copy of an SBI report and medical records pertaining to his case. (Docket Entry 2-2 at 10-11.) Petitioner does not elaborate on how he obtained the documents. That fact alone subjects his request to proceed under Section 2244(d)(1)(D) to dismissal. See Freeman v. Zavaras, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged

Brady materials earlier); Farabee v. Clarke, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain his inability to discover the factual predicate earlier), recommendation adopted, 2013 WL 1098093 (E.D. Va. March 13, 2013) (unpublished); Norrid v. Quarterman, No. 4:06-cv-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that the petitioner had the burden of demonstrating the applicability of subparagraph (D)); Frazier v. Rogerson, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Thus, Petitioner has not borne "the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim . . . ." DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006).

Under subparagraph (A), Petitioner's conviction, for purposes of the statute of limitations, became final on August 4, 2010 - the day of his conviction. North Carolina limits the ability of individuals who plead guilty to appeal their convictions as a matter of right. See N.C. Gen. Stat. § 15A-1444 (2010). Here, the trial court sentenced Petitioner to a term of 168 to 211 months in prison - the minimum sentence, 168 months, falls within the mitigated range of sentences for a B1 felony with Petitioner's

7

prior record level of I, see N.C. Gen. Stat. § 15A-1340.17 (2010). Therefore, Petitioner could not appeal his conviction as a matter of right. See N.C. Gen. Stat. § 15A-1444(a1) (2010). Petitioner's case thus became final, for purposes of calculating the limitation period, on August 4, 2010. See Gonzalez v. Thaler, __ U.S. __, __, 132 S. Ct. 641, 653-54 (2012) (holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner did not have a right to appeal, the limitation period ran from the day of judgment) (Osteen, Sr., J., adopting the recommendation of Dixon, M.J.).[7]

Petitioner's one-year period ran from August 4, 2010, until its expiration on August 4, 2011. Although Petitioner filed two MARs in state court, he filed them after the limitations period had run, and those belated filings could not toll the statute, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after the federal limitations period do not restart or revive the federal limitations period). Therefore, Petitioner filed his claims untimely, outside of the statute of limitations.

---

[7] Even if Petitioner had the opportunity to appeal, the North Carolina Rules of Appellate Procedure require a notice of appeal within fourteen days of judgment. N.C.R. App. P. 4(a)(2) (2010). Thus, Petitioner's ability to appeal would have expired August 18, 2010, and the limitations period would have expired on August 18, 2011 - well before he filed his MARs or the instant Petition.

8

Despite the Petition's untimeliness, Petitioner requests that the Court address the merits of his Petition. (Docket Entry 9 at 3-9.) Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations for habeas claims, see 28 U.S.C. § 2244(d)(1), a court can equitably toll the one-year limitations period, see Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling requires that Petitioner demonstrate that (1) he has diligently pursued his rights, and (2) extraordinary circumstances prevented a timely filing. Id. at 649. Equitable tolling involves a case by case analysis. Id. at 649-50.

Here, Petitioner argues Trevino v. Thaler, __ U.S. __, 133 S. Ct. 1911 (2013), and Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309 (2012), provide an exception to the statute of limitations; further, he claims actual innocence, his lack of legal fluency, denial of assistance by North Carolina Prisoner Legal Services, and the lack of access to a law library as reasons to toll the statute of limitations. (See Docket Entry 9 at 4-8.) The undersigned will address each argument in turn.

Both Trevino and Martinez addressed whether a court could bypass the procedural default rule to address claims of ineffective assistance of counsel in certain situations. See Trevino, 133 S. Ct. at 1915; Martinez, 132 S. Ct. at 1313. In both cases, the Supreme Court held that where petitioners, under state law or as a

matter of practice, cannot claim ineffective assistance of counsel on direct review, the procedural default rule will not prevent a federal court from addressing the issue if petitioners had either no counsel or ineffective counsel in the initial-review collateral proceeding. Trevino, 133 S. Ct. at 1921; Martinez, 132 S. Ct. at 1320. Neither case overruled or even addressed the statute of limitations as Petitioner claims (see Docket Entry 9 at 4). See Trevino, 133 S. Ct. at 1911; Martinez, 132 S. Ct. at 1309. Thus, Petitioner erroneously relies on Trevino and Martinez.

Petitioner also contends that his actual innocence ought to prevent application of the statute of limitations. (Docket Entry 2 at 12-13.) The United States Supreme Court has recognized that a showing of actual innocence may overcome the one-year statute of limitations. McQuiggin v. Perkins, ___ U.S. ___, ___, 133 S. Ct. 1924, 1928 (2013). However, the Court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id. In this case, Petitioner provides a copy of an SBI report (Docket Entry 2-3 at 4, 17-19), letters written in Spanish (id. at 13-16, 24),[8] a letter

---

[8] "It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English." United States v. Rivera-Roasio, 300 F.3d 1, 5 (1st Cir. 2002); see also Rivas-Montano v. United States, Nos. 8:03-cr-47-T-24EAJ, 8:06-cv-852-T-24-EAJ, 2006 WL 1428507 (M.D. Fla. May 22, 2006) (unpublished) (citing cases). Because Petitioner submitted these letters in Spanish, the undersigned cannot rely on them in

10

written in English (id. at 23), and medical notes (id. at 21-22, 25-26).

Petitioner relies heavily on the fact that the State did not find his semen or DNA on the victim or the items tested as proof of his innocence. (See, e.g., Docket Entry 2-2 at 8, 11, 16, 17, 22.) However, the State's inability to discover his semen or DNA on the victim does not, by itself, establish his innocence. In North Carolina, none of the other charged offenses require evidence of semen to convict. See N.C. Gen. Stat. §§ 14-27.2, 14-27.4, 14-202.1 (2010); see also State v. Williams, 314 N.C. 337, 351 333 S.E.2d 708, 718 (1985) (holding that "the emission of semen need not be shown to prove the offense of rape"). Moreover, the additional items submitted by Petitioner do not demonstrate his actual innocence. Furthermore, Petitioner's guilty plea undercuts his argument that he "claimed his [i]nnocence from day one . . . ." (Docket Entry 9 at 6 (emphasis removed).) In this case, Petitioner has not presented new evidence to demonstrate that "'no juror, acting reasonably, would have voted to find him guilty beyond a

---

evaluating Petitioner's instant Petition. See Zuniga v. Effler, 474 F. App'x 225, 225 (4th Cir. 2012) (holding that the district court did not have a duty to translate a party's submissions into English). However, the undersigned will consider the letter in English, which appears to translate one of the letters in Spanish into English. Moreover, it appears that Petitioner submitted the same letter twice. (Compare Docket Entry 2-3 at 13, with id. at 24.)

reasonable doubt.'" McQuiggin, 133 S. Ct. at 1928 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Petitioner's final arguments - that he lacks legal fluency, North Carolina Prisoner Legal Services denied assistance, and he lacks access to a law library - do not provide a sufficient basis for tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) ("[I]gnorance of the law is not a basis for equitable tolling."); Johnson v. Beck, No. 1:08CV336, 2008 WL 3413303, at *4 (M.D.N.C. Aug. 8, 2008) (refusing to toll when prisoner did not have access to a library, but did have access to North Carolina Prisoner Legal Services), recommendation adopted, slip op. (Docket Entry 17) (M.D.N.C. Feb. 12, 2009); Rhew v. Beck, 349 F. Supp. 2d 975, 978 (M.D.N.C. 2004) (Osteen, Sr., J, adopting recommendation of Eliason, M.J.) (refusing to toll when prisoner cited delays by North Carolina Prisoner Legal Services), appeal dismissed, 158 F. App'x 410 (4th Cir. 2005). Furthermore, Petitioner's ability to file his MARs and to petition for a writ of certiorari in state court, notwithstanding these conditions, undermine his request for tolling.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 6) be granted, the Petition (Docket Entry 2) be denied, and that Judgment be entered dismissing this action, without issuance of a certificate of appealability.

                                              /s/ L. Patrick Auld
                                                 **L. Patrick Auld**
                                     **United States Magistrate Judge**

January 28, 2015